IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

URIEL ESPINOZA IBARRA,

      Debtor.

CHAPTER 11
(Subchapter V)

CASE NO.  21-52496-jwc

PLAN OF REORGANIZATION

Dated this 18th day of June, 2021

Filed by:

**Uriel Espinoza Ibarra**

Attorney for Debtor
Cameron M. McCord, Esq.
Nate Juster, Esq
Jones & Walden LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300

COMES NOW Uriel Espinoza Ibarra, Debtor and Debtor in possession in the above-captioned case ("Debtor"), and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtor.  Debtor is the proponent of this Plan as required under section 1191 of the Bankruptcy Code.

## Article 1
## Contents of the Plan; Required Disclosures

1.1    *Subchapter V Plan of Reorganization*. This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

1.2    *History of the Debtor's Business Operations*.

Debtor is a resident of the State of Georgia. Debtor is the CEO and sole shareholder of AP Framing, Inc., a commercial framing company located at 595 Old Norcross Road, Suite A, Lawrenceville, Georgia 30046 ("AP Framing"). From 2011 through approximately 2016, AP Framing provided labor only for framing on large commercial apartment complex projects throughout the southeastern United States.  From approximately 2016 through 2019, AP Framing provided turn-key service where AP Framing would provide both labor and materials. Unfortunately, AP Framing underbid some of these jobs and did not allocate enough funds to account for materials necessary to rework any errors that arose during the job.  This caused AP Framing to fall behind to its primary lumber supplier, 84 Lumber, Inc. ("84 Lumber"). As of August 2020, AP Framing was indebted to 84 Lumber in the approximate amount of $1,400,000.00. Debtor personally guaranteed payment to 84 Lumber.

AP Framing filed for chapter 11 bankruptcy on August 10, 2020 and is operating pursuant to the AP Framing Plan that was confirmed on February 10, 2021 in the AP Framing Bankruptcy.

84 Lumber filed suit against Debtor in the Allegheny County Court of Common Pleas, State of Pennsylvania, Case No. GD-20-009088 to enforce Debtor's personal guaranty. This suit, and others, led Debtor to file bankruptcy on March 26, 2021 (the "Petition Date") to reorganize his financial affairs without the threat of collection.

1.3    **Prepetition Assets and Liabilities**

Debtor had the following assets as of the Filing Date: (i) 50% interest in that certain real property located at 3313 Pristine Pt, Douglasville, GA with a fair market value of $833,200; (ii) 100% interest in that certain real property located in Jalisco, Mexico with a fair market value of $110,000.00[1]; (iii) household goods with a value of $5,000.00; (iv) a 50% interest in a Bank of America bank account with $2,000.00; (v) a 2019 Ram 1500 with a value of $22,000.00; (vi) 2017 Harley Davidson with a value of $10,777; (vii) a 2016 Dodge Dart with a value of $8,000; (viii) a

---

[1] In 2018, Debtor and his ex-wife, Evelyn Espinoza, invested in BitCoin.  In early 2021, the Debtor and Ms. Espinoza sold the BitCoin and the Debtor used the majority of his portion of the proceeds to purchase this home in Mexico. The Debtor and Ms. Espinoza divorced in 2009.

Big Boys Chopper with a value of $1,000.00, and (ix) 100% membership interest in AP Framing, LLC.

Debtor scheduled liabilities consisting of (i) secured claims of approximately $53,818.65 and (ii) general unsecured claims totaling approximately $1,813,629.31.

     1.4    *Liquidation Analysis.*

Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in liquidation, the trustee would incur costs associated with liquidation such as broker fees. The details of a hypothetical liquidation are in the liquidation analysis attached as "**Exhibit A**". Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the appointment of a Chapter 7 trustee and the liquidation of assets. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Subchapter V trustee or Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code[2].

     1.5    *Alternative Confirmation Standards Under Section 1191(a) and (b).* Debtor seeks to confirm this Plan by obtaining the consent of all Impaired Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting. If Debtor succeeds in obtaining the consent of all Impaired Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtor is unable to obtain the consent of all Impaired Classes, Debtor will request the Court to confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

     1.6    *Property and Claims.* This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

---

[2] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

11 USC § 330 provides for reasonable compensation for actual, necessary services rendered by the Subchapter V trustee and reimbursement for actual, necessary expenses. The Subchapter V trustee's hourly rate is $360.00.

**Article 2**
**Definitions and General Provisions**

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1     *Definitions.* The following terms, when used in this Plan, shall have the following meaning:

2.1.1   "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2   "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

2.1.3   "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4   "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5   "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6   "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7   "*Ballot*" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8   "*Bankruptcy Case*" means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.1.9   "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10 "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.11.A "*Bar Date"* The Court established June 4, 2021 as the deadline for nongovernmental entities to file a proof of claim pursuant to docket entry number 7 (the "Bar Notice"). The terms of the Bar Notice will continue in full effect after the Effective Date.

2.1.11.B. "*Bar Notice*" shall have the meaning as defined in 2.1.11.A herein.

2.1.12 "*Business Day*" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.14 "*Causes of Action*" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.16 "*Claim*" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "*Classes*" means a category of Claims described in this Plan.

2.1.17A "*Cure Amount*" means the amount in Cash necessary to satisfy the requirements to cure a default pursuant to 11 U.S.C. § 365 for assumption of an executory contract or unexpired lease.

2.1.18 "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "*Confirmation Order*" means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.21  "*Debtor*" shall mean Uriel Espinoza Ibarra, the debtor in this Bankruptcy Case.

2.1.22  Intentionally Omitted.

2.1.23  "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24  "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection  filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25  "*Distribution*" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26  "*District Court*" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27  "*Effective Date*" means the date that is 60 days after entry of a Confirmation Order.

2.1.28  "*Estate*" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earnings from services performed by the Debtor after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

2.1.29  "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.30  "*Filing Date*" means March 26, 2021.

2.1.31  "*Final Distribution*" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.32  "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.33  "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.34  "*Government Bar Date*" in accordance with 11 U.S.C. §502, is 180 days after the order for relief (here the Filing Date) and means September 22, 2021.

2.1.34.1 "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.35  "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.36  "*Initial Distribution Date*" means the Effective Date.

2.1.37  "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.38  "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.39  "*Plan*" means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.40  "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.41  "*Priority Tax Claim*" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.42  "*Professional Compensation*" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor and the fees and expenses of the Subchapter V Trustee, and (2) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.43  "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed

Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.44 "*Record Holder*" means the Holder of a Claim as of the Record Date.

2.1.45 "*Released Parties*" means Debtor.

2.1.46 "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor' business, including without limitation, claim overpayments and tax refunds, (v) any and all claims against Joseph Paul Burk, including all rights to setoff; (vi) all Causes of Action that are Avoidance Actions and (vii) all those claim or causes of action described in Section 7.3 as Preserved Causes of Action.

2.1.47 "*Schedules*" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.48 "*Secured Claim*" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.49 "*Subchapter V Trustee*" means John Whaley who was appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case, and any successor trustee to John Whaley.

2.1.50 "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51 "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52 "*Unsecured Claim*" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    *Time*. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or

happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    *Events of Default*.    Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments or otherwise pursuant to the Plan, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  The Holder must send such Default Notice to (a) Debtor via certified mail or recognized overnight carrier with a copy to Debtor via email and (b) by certified mail to Leon S. Jones (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia with a copy via email. Debtor shall have ten (10) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2).  In the event of a default under the Plan as to any creditor or creditors and Debtor cures any such default, then the terms of the Plan shall remain in effect and Debtor shall then be deemed to be in compliance with the Plan and the injunction as to such creditor or creditors shall be and remain unaffected without further order, action or notice, and without limitation, such creditor or creditors shall be enjoined from taking any actions prohibited by the terms of the Plan (including without limitation Section 11.5 of the Plan). In the event of an uncured default, then such creditor may take any action provided for by law to enforce the terms of the Plan, but the injunction of the Plan shall remain in place to prohibit any action other than to enforce the terms of the Plan.

2.4    *Notices*.    All notices under the Plan shall be in writing.  Unless otherwise specifically provided herein, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email and certified mail or nationally recognized overnight delivery service to Leon S. Jones at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by Leon S. Jones (Jones & Walden, LLC shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally

recognized overnight delivery service or Certified Mail Return Receipt.

**Article 3**
**Classification of Claims and Interests**

3.1    *Summary.*  The categories of Claims and Interests set forth below classify all Claims against Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2    Classes:

3.2.1    Class 1 consists of the Secured or Priority Tax Claims of the Internal Revenue Service.

3.2.2    Class 2 consists of the Secured or Priority Tax Claims of the Georgia Department of Revenue.

3.2.3    Class 3 consists of the Secured or Priority Tax Claims of Governmental Units Not Otherwise Classified.

3.2.4    Class 4 consists of the Secured Claim of Ford Motor Credit Company.

3.2.5    Class 5 consists of the Secured Claim of Harley Davison Credit Corp.

3.2.6    Class 6 consists of the Secured Claim of Capital One Auto Finance.

3.2.7    Class 7 consists of the Secured Claim of Santander Consumer USA Inc d/b/a Chrysler Capital.

3.2.8    Class  8 consists of the Unsecured Claim of the Small Business Association.

3.2.9    Class 9 consists of the General Unsecured Claims

3.2.10    Class 10 consists of the Secured or Priority Tax Claims of the North Carolina Department of Revenue.

**Article 4**
**Treatment of Claims and Interests**

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

Notwithstanding anything elsewhere in the Plan, the Bar Notice shall continue in full force and effect following confirmation of the Plan.

Nothing herein shall be deemed an admission as to the nature, validity or amount of such claim and Debtor reserves the right to object to any and all claims.

Upon request by Debtor, Holders of Claims and Interest shall provide the then outstanding balance of said Holder's distributions due under the Plan and an accounting of all distributions or payments received since the Filing Date and the application of such payments.

**4.1    Class 1:  Secured or Priority Tax Claims of the Internal Revenue Service**

Class 1 consists of any Secured Claim or Priority Tax Claim against Debtor held by the Internal Revenue Service (the "IRS") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 1 IRS Tax Claim"). The IRS filed proof of claim number 1 on April 8, 2021 which asserts priority unsecured claims totaling $100. Debtor estimates his 2020 tax liability will be $0. Accordingly, Debtor anticipates the IRS will amend its proof of claim. In the event the IRS does not amend its proof of claim to reflect Debtor's accurate income tax liability, if any, Debtor intends to object to the same. Accordingly, for purpose of the Plan Debtor has estimated the Class 1 IRS Tax Claim as to income tax liability at a total of $0.00. Debtor is aware that the IRS filed a proof of claim in the AP Framing Bankruptcy asserting trust fund taxes owed by AP Framing in the amount of $545.83 (the "AP Framing IRS Trust Fund Taxes").  The AP Framing Plan provides for the payment of any allowed AP Framing Trust Fund Taxes in full. The IRS has not filed a proof of claim in this case for said AP Framing IRS Trust Fund Taxes. To the extent the IRS holds an Allowed Class 1 IRS Tax Claim on account of AP Framing IRS Trust Fund Taxes, any such claim will be paid in full by AP Framing pursuant to the AP Framing Plan.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and is September 22, 2021. Upon passage of the Government Bar Date, any other claim except as set forth in the IRS proof of claim asserted or assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the IRS assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the

terms herein, and the IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims. After the Government Bar Date, any estimated claim of the IRS shall be capped at (i) if a proof of claim was timely filed, the amount provided in the proof of claim filed by the IRS prior to the Bar date or (ii) if no proof of claim is timely filed, the amount provided in Debtor's schedules, unless the Debtor scheduled such amount as unliquidated, contingent or disputed, in which case such amounts will be $0.00.

The Class 1 IRS Tax Claim estimated at $0.00 shall be paid pursuant to Class 1. In the event the IRS holds an Allowed Class 1 IRS Tax Claim for income taxes or otherwise, other than on account of AP Framing IRS Trust Fund Taxes, Debtor shall pay the Allowed Class 1 IRS Tax Claim in equal monthly payments of $50.00 each commencing on the 28th day of the month of the Effective Date and continuing by the 28th day of each subsequent month until paid in full. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 1 IRS Tax Claim on the 5-year anniversary of the Filing Date (i.e., March 26, 2026) unless the IRS agrees to a longer payment term, which such agreement may be communicated by the IRS continuing to accept monthly payments after March 26, 2026.

The AP Framing Plan provides for payments in full towards any AP Framing Tax Claim, and Debtor shall receive a credit against any AP Framing IRS Trust Fund Tax portion of any Allowed Class 1 IRS Tax Claim on account of each payment by AP Framing. Accordingly, payments by AP Framing, Debtor and any other party on account of the underlying debt shall not result in a double recovery by the IRS. Solely in the event the IRS holds an Allowed Class 1 Tax Claim on account of AP Framing IRS Trust Fund Taxes, and AP Framing performs its obligation to pay AP Framing IRS Trust Fund Taxes in accordance with the AP Framing Plan, Debtor will not make any payments on the AP Framing IRS Trust Fund Taxes portion of the Class 1 IRS Tax Claim, otherwise, if AP Framing Does not perform its obligations to the pay the AP Framing IRS Trust Fund Taxes pursuant to the AP Framing Plan, Debtor will pay the AP Framing IRS Trust Fund Taxes portion of the Allowed Class 1 IRS Tax Claim (less credit for any payments made by AP Framing or otherwise) on or by the 5-year anniversary of the Filing Date (i.e., March 26, 2026) unless the IRS agrees to a longer payment term. Interest shall accrue on the principal tax amount due from the Effective Date at the annual rate of 3% or such lesser rate as (i) agreed to by the IRS or (ii) indicated on the applicable IRS proof of claim. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 1 received by the IRS shall be applied to the principal tax obligation owed by Debtor pursuant to Class 1. Debtor's Class 1 payments shall be applied in the following order: (i) interest accruing on the Class 1 IRS Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 1 IRS Tax Claim and (iii) interest and penalties which accrued prior to the Effective Date.

Any general unsecured claim of the IRS for penalties or otherwise (the "IRS General Unsecured Claim") is classified as a Class 9 general unsecured claim and shall be treated and paid as a Class 9 general unsecured claim.

A failure by the Debtor to make a payment on the Class 1 IRS Tax Claim to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 1, the IRS must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary,

the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 1 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may (a) enforce the entire amount of its then outstanding Allowed Class 1 IRS Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 1 IRS Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the IRS that is not otherwise assessable or due and payable on or prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall, and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1192 or 1141 (as applicable) of the Bankruptcy Code. However, the rights and treatment of the IRS and obligations and liability of Debtor or its property regarding any claim of the IRS against Debtor which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Filing Date and not timely asserted or amended by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 1 Creditor is Impaired by the Plan and the holder of the Class 1 Claim is entitled to vote to accept or reject the Plan as to Class 1.

**4.2    Class 2:    Secured or Priority Tax Claims of the Georgia Department of Revenue**

Class 2 shall consist of any Secured Claim or Priority Tax Claim against Debtor held by the Georgia Department of Revenue (the "GDR") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 2 GDR Tax Claim"). As of the date of the filing of this Plan, Debtor did not schedule a claim by the GDR nor has the GDR filed a proof of claim.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and is September 22, 2021. Upon passage of the Government Bar Date, any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of the GDR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims. After the Government Bar Date, any estimated claim of the GDR shall be capped at (i) if a proof of claim

13

was timely filed, the amount provided in the proof of claim filed by the GDR prior to the Bar date or (ii) if no proof of claim is timely filed, the amount provided in Debtor's schedules, unless the Debtor scheduled such amount as unliquidated, contingent or disputed, in which case such amounts will be $0.00.

The Class 2 GDR Tax Claim shall be paid pursuant to Class 2, and any GDR general unsecured tax claim is specifically classified as and will be paid pursuant to the General Unsecured Class 9. In the event the GDR holds an Allowed Class 2 GDR Tax Claim, Debtor shall pay the Allowed Class 2 GDR Tax Claim in 60 equal monthly payments each commencing on the 28th day of the month of the Effective Date and continuing by the 28th day of each subsequent month until paid in full. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 2 GDR Tax Claim on the 5-year anniversary of the Filing Date (i.e. March 26, 2026) unless the GDR agrees to a longer payment term, which such agreement may be communicated by the GDR continuing to accept monthly payments after March 26, 2026. Interest shall accrue on the principal tax balance of the Class 2 Tax Claim at the annual rate of 7.75% or such lesser rate as agreed to by the GDR.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2 received by the Georgia Department of Revenue shall be applied to the principal tax obligation of the Class 2 GDR Tax Claim owed by Debtor pursuant to Class 2.  Debtor's Class 2 payments shall be applied in the following order: (i) interest accruing on the Class 2 Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 2 GDR Tax Claim and (iii) interest and penalties which accrued prior to the Filing Date and Effective Date.  Debtor is not aware of any secured claim held by the GDR.

A failure by the Debtor to make a payment on the Class 2 GDR Tax Claim to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR.  In the event of a default under Class 2, the GDR must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Receipt by Debtor's attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default under Class 2 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the GDR that is not otherwise assessable or due and payable on or prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall, and the right of the GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.  However, the rights and treatment of the GDR and obligations and liability of Debtor or its property regarding any claim of the GDR against Debtor which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall be treated and fixed in accordance with the

Plan, and any additional, other or amended claims assessable or due and payable prior to the Filing Date and not timely asserted or amended by the GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is not Impaired by the Plan and the holder of the Class 2 Claim is conclusively deemed to have accepted the plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

**4.3      Class 3: Secured or Priority Tax Claims of Governmental Units Not Otherwise Classified**

Class 3 consists of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8), which are not otherwise specifically classified in the Plan ("Class 3 Governmental Unit Claim"). The amount of any claim of a Governmental Unit that is not assessed or assessable on or prior to the Effective Date, and the right of the particular governmental unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the particular governmental unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1192 or 1141 (as applicable) of the Bankruptcy Code if applicable. Debtor is not aware of any potential Holders of Class 3 Governmental Unit Claims not otherwise classified in the Plan.

In the event there are Allowed Holders of Class 3 Governmental Unit Priority Tax Claims, Debtor shall pay such Allowed Class 3 Government Unit Priority Tax Claims at the rate of $50.00 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 3.25% or at the rate otherwise as required by the Bankruptcy Code, with a final balloon payment on the 5th anniversary of the Filing Date (i.e. March 26, 2026) unless such Holder agrees to a longer payment term, which such agreement may be communicated by the Holder continuing to accept monthly payments after March 26, 2026. Debtor reserves the right to pay any Class 3 Governmental Unit Claim in full at any time.

Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3 received by such holder shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3 to such holder. Debtor's Class 3 payments shall be applied in the following order: (i) interest accruing on the Class 3 Governmental Unit Priority Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 3 Governmental Unit Priority Tax Claim and (iii) interest and penalties which accrued prior to the Effective Date.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and is September 22, 2021. Upon passage of the Government Bar Date, any claim asserted or assertable by a Holder of a Class 3 Claim on or before the Filing Date or treated as arising prior to the Filing

Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of a governmental entity assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the governmental shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims. After the Government Bar Date, any estimated claim of a governmental unit shall be capped at (i) if a proof of claim was timely filed, the amount provided in the proof of claim filed by such Holder prior to the Bar date or (ii) if no proof of claim is timely filed, the amount provided in Debtor's schedules unless the Debtor scheduled such amount as unliquidated, contingent or disputed, in which case such amounts will be $0.00.

A failure by the Debtor to make a payment under Class 3 to the Holder of a Class3 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default as to such Governmental Unit under Class 3. In the event of a default under Class 3, the Holder of a Class 3 Governmental Unit Tax Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 3 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 3 Governmental Unit Tax Claim may (a) enforce the entire amount of its then outstanding Allowed Class 3 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Claim of any Class 3 Creditor is not Impaired by the Plan, and the holder of any Class 3 Claim is conclusively deemed to have accepted the plan.

### 4.4    Class 4: Secured Claim of Ford Motor Credit Company

Class 4 consists of the Secured Claim of Ford Motor Credit Company ("Ford"). Ford obtained a Writ of Fi.Fa. in the Superior Court of Gwinnett County in the amount of $15,931.48 on February 12, 2003, recorded in the Gwinnett County Lien Book 1421, Page 255 (the "Ford Fi.Fa.". Ford renewed the Ford Fi.Fa. by entry of a Nulla Bona on October 2, 2009, Lien Book 2798, 146. Ford again renewed the Ford Fi.Fa. by entry of a Nulla Bona on June 16, 2016, Lien Book 4652, Page 219.

Debtor scheduled Ford as holding a secured claim in the amount of $15,931.48 (the "Allowed Class 4 Secured Claim") secured by a first priority lien on Debtor's residence commonly referred to as 3313 Pristine Pt. Dacula, Gwinnett County, GA 30019-4643 (the "Residence").

Debtor shall pay the Allowed Class 4 Secured Claim (i.e., $15,931.48) at the rate of $288.04 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month for a period of 60 months (or the next

Business Day if the 28th day is not a Business Day), with interest accruing on the principal amount of the allowed Class 4 Secured Claim at the annual rate of 3.25%.

Upon receipt of payment in full of the Class 4 Secured Claim (i.e., $15,931.48 plus interest under the Plan), Ford shall release its lien on the Residence and cancel its Ford Fi. Fa. as to the Residence. Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

In the event of a default under Class 4, the Holder of a Class 4 Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 4 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 4 Claim may (a) enforce the entire amount of its then outstanding Allowed Class 4 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 4 Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The holder of the Class 4 Secured Claim is Impaired by the Plan and the holder of the Class 4 Secured Claim is entitled to vote to accept or reject the Plan.

**4.5** **Class 5: Secured Claim of Harley Davidson Credit Corp.**

Class 5 shall consist of the Secured Claims of Harley Davidson Credit Corp. ("Harley Davidson"). Debtor scheduled Harley Davidson as holding a secured claim in the amount of $14,217.26 secured by a lien on Debtor's 2017 Harley Davidson Flhxs Street Glide S (the "Class 5 Vehicle"). On April 21, 2020, Harley Davidson filed proof of claim 5 asserting a secured claim in the amount of $14,225.00 (the "Class 5 Secured Claim") secured by the Class 5 Vehicle. Harley Davidson's Class 5 Secured Claim is evidenced by the following loan documents (collectively the "Harley Davidson Loan Documents: (i) Retail Installment Sales Contract in the original principal amount of $26,580.44 dated November 7, 2016 with Eaglemark Savings Bank as lender and (ii) Lien on Certificate of Title for VIN #1HD1KRC11HB621236 (the "Harley Davidson Lien").

Debtor shall pay the Class 5 Secured Claim as follows: Commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), Debtor shall make monthly payments to Harley Davidson in the amount of $263.58 with a final payment of any accrued but unpaid interest as well as any remaining principal outstanding on the Class 5 Secured Claim on the day before the 5 year anniversary of the Effective Date. Interest shall accrue on the principal balance of the Class 5 Secured Claim at the rate of 4.25% per annum. Harley Davidson shall retain its lien on the Class 5 Vehicle and said lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date. Upon receipt of payment in full of the Class 5 Secured Claim, Harley Davidson shall release its lien on the Class 5 Vehicle. Any payments paid to Harley Davidson after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to the principal balance of the Class 5 Secured Claim.

A failure by the Debtor to make a payment under Class 5 to the Holder of a Class 5 Claim pursuant to the terms of the Plan shall be an event of default as to such Holder under Class 5. In the event of a default under Class 5, the Holder of a Class 5 Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 5 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 5 Claim may (a) enforce the entire amount of its then outstanding Allowed Class 5 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 5 Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There shall be no pre-payment penalty. The Claim of Harley Davidson is Impaired by the Plan and Harley Davidson is entitled to vote.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.6    Class 6: Secured Claim of Capital One Auto Finance

Class 6 shall consist of the Secured Claims of Capital One Auto Finance, a division of Capital One, N.A. ("Capital One"). Debtor scheduled Capital One as holding a secured claim in the amount of $18,823.18 secured by a lien on Debtor's 2019 Ram 1500 Crew Pickup (the "Class 6 Vehicle"). On April 13, 2020, Capital One filed proof of claim 3 asserting a secured claim in the amount of $18,957.21 (the "Class 6 Secured Claim") secured by the Class 6 Vehicle. Capital One's Class 6 Secured Claim is evidenced by the following loan documents (collectively the "Capital One Loan Documents: (i) Retail Installment Sales Contract in the original principal amount of $33,595.93 dated February 9, 2019 with Mall of Georgia CDJ as lender and (ii) Lien on Certificate of Title for VIN #1C6SRFKT5KN671556 (the "Capital One Lien").

Debtor shall pay the Class 6 Secured Claim as follows: Commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), Debtor shall pay Capital One the monthly payment amount on the Class 6 Secured Claim of $348.79 with a final payment of any accrued but unpaid interest as well as any remaining principal outstanding on the Class 6 Secured Claim on the day before the 5 year anniversary of the Effective Date. Interest shall accrue at the rate of 4.25% per annum.  Capital One shall retain its lien on the Class 6 Vehicle and said lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date. Upon receipt of payment in full of the Class 6 Secured Claim, Capital One shall release its lien on the Vehicle. Any payments paid to Capital One after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to the principal balance of the Class 6 Secured Claim.

A failure by the Debtor to make a payment under Class 6 to the Holder of a Class 6 Claim pursuant to the terms of the Plan shall be an event of default as to such Holder under Class 6.  In the event of a default under Class 6, the Holder of a Class 6 Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 6 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 6 Claim may (a) enforce the entire amount of its then outstanding Allowed Class 6 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 6 Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There shall be no pre-payment penalty. The Claim of Capital One is Impaired by the Plan and Capital One is entitled to vote.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims

**4.7**    **Class 7: <u>Secured Claim of Santander Consumer USA Inc d/b/a Chrysler Capital</u>**

Class 7 shall consist of the Secured Claims of Santander Consumer USA Inc d/b/a Chrysler Capital ("Chrysler Capital").  Debtor scheduled Chrysler Capital as holding a secured claim in the amount of $2,973.02 secured by a lien on Debtor's 2016 Dodge Dart (the "Class 7 Vehicle"). On April 13, 2020, Chrysler Capital filed proof of claim 2 asserting a secured claim in the amount of $2,974.46 (the "Class 7 Secured Claim") secured by the Class 7 Vehicle.  Chrysler Capital's Class 7 Secured Claim is evidenced by the following loan documents (collectively the "Chrysler Capital Loan Documents: (i) Retail Installment Sales Contract in the original principal amount of $28,140.21 dated November 28, 2015 with Mall of Georgia CDJ as lender and (ii) Lien on Certificate of Title for VIN #1C3CDFEB8GD585229 (the "Chrysler Capital Lien").

Debtor shall pay the Class 7 Secured Claim as follows: Commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), Debtor shall pay Chrysler Capital the monthly payment amount on the Class 7 Secured Claim of $129.50. Debtor shall continue to make such $129.50 principal and interest payments on the 28th day of each month through and including the 24th month following the Effective Date. On the 28th day of the 24th month following the Effective Date, Debtor shall make a final payment of any accrued but unpaid interest as well as any remaining principal outstanding on the Class 7 Secured Claim. Interest shall accrue at the rate of 4.25% per annum. Chrysler Capital shall retain its lien on the Class 7 Vehicle and said lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date. Upon receipt of payment in full of the Class 7 Secured Claim, Chrysler Capital shall release its lien on the Class 7 Vehicle. Any payments paid to Chrysler Capital after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to the principal balance of the Class 7 Secured Claim.

A failure by the Debtor to make a payment under Class 7 to the Holder of a Class 7 Claim pursuant to the terms of the Plan shall be an event of default as to such Holder under Class 7. In the event of a default under Class 7, the Holder of a Class 7 Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 7 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 7 Claim may (a) enforce the entire amount of its then outstanding Allowed Class 7 Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 7 Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There shall be no pre-payment penalty. The Claim of Chrysler Capital is Impaired by the Plan and Chrysler Capital is entitled to vote.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.8    Class 8: Unsecured Claim of the Small Business Association

Class 8 shall consist of the claim of the Small Business Association ("SBA") in the amount of $149,900.00. (the "Class 8 Unsecured Claim"). The AP Framing Plan provides for payment in full of the Class 8 Unsecured Claim (see AP Framing Plan Article 4.1 Class 1) and Debtor shall receive a credit against the Class 8 Unsecured Claim on account of each payment by AP Framing. Accordingly, payments by AP Framing, Debtor and any other party on account of the underlying debt shall not result in a double recovery by the SBA.

In the event AP Framing fails to make the monthly payments required in the AP Framing Plan and fails to cure said default in monthly payments pursuant to the terms of the AP Framing

Plan or as otherwise agreed by AP Framing and SBA, the SBA shall provide a Notice of Default to Debtor and upon the failure to cure said default, the Class 8 Unsecured Claim shall be paid as a Class 9 Unsecured Claim.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

The Holder of the Class 8 claim is impaired and entitled to vote to accept or reject the Plan.

### 4.9    Class 9: General Unsecured Claims

Class 9 consists of general unsecured claims not otherwise specifically classified in the Plan, including deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f).

Debtor shall pay the General Unsecured Creditors a pro-rata share of $210,000.00 paid in 20 quarterly payments of $10,500.00 each, commencing on the 1st day of the 1st quarter following the Effective Date and continuing on or by the 1st day of each subsequent quarter for a total of 20 payments.

Debtor anticipates and projects but does not warrant the following Holders of Class 9 Claims under Class 9:

| Anticipated Holders | Est. Claim | Quarterly Distrib. | Total Distrib. |
|---|---|---|---|
| 84 Lumber Company, L.P. | $1,388,388.26 | $8,523.73 | $170,474.70 |
| Alabama Power | $520.66 | $3.20 | $63.93 |
| American Express | $25,583.98 | $157.07 | $3,141.36 |
| Bank of America | $124,838.00 | $766.42 | $15,328.36 |
| Bank of America | $113,063.66 | $694.13 | $13,882.64 |
| Bank of America | $13,344.92 | $81.93 | $1,638.57 |
| Capital One | $22,227.14 | $136.46 | $2,729.18 |
| Capital One | $4,484.15 | $27.53 | $550.59 |
| Northside Hospital | $15,041.35 | $92.34 | $1,846.87 |
| SYNCB/Guitar Center | $2,800.00 | $17.19 | $343.80 |
| **Total** | **$1,710,292.12** | **$10,500.00** | **$210,000.00** |

Notwithstanding anything else in this document to the contrary, any claim against Debtor shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor (including AP Framing) and Debtor's obligations hereunder shall be reduced accordingly.

The Claims of the Class 9 Creditors are Impaired by the Plan and the holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

**4.10**  **Class 10: Secured or Priority Claims of the North Carolina Department of Revenue**

The North Carolina Department of Revenue ("NCDOR") holds an estimated claim in the amount of $65,645.00 (such amount or such lower amount as allowed by the Court with interest accruing herein shall be referred to as the "Class 10 NCDOR Tax Claim"). The taxes dues and owing pursuant to the Class 10 NCDOR Tax Claim are trust fund taxes for withholding listing Uriel Espinoza as a responsible party for AP Framing. Pursuant to Class 4 of the AP Framing Plan, AP Framing shall pay the NCDOR monthly payments of $100 with a balloon payment on the 60th month following the Effective Date of the AP Framing Plan. Debtor shall receive a credit against the Class 10 NCDOR Tax Claim on account of each payment by AP Framing.  Accordingly, payments by AP Framing, Debtor and any other party on account of the underlying debt shall not result in a double recovery by the NCDOR.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and is September 22, 2021. Upon passage of the Government Bar Date, any other claim asserted or assertable by the NCDOR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the NCDOR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the NCDOR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.  After the Government Bar Date, any estimated claim of the NCDOR shall be capped at (i) if a proof of claim was timely filed, the amount provided in the proof of claim filed by the NCDOR prior to the Bar date or (ii) if no proof of claim is timely filed, the amount provided in Debtor's schedules, unless the Debtor scheduled such amount as unliquidated, contingent or disputed, in which case such amounts will be $0.00

Debtor will pay the Allowed Class 10 NCDOR Tax Claim (less credit for any payments made by AP Framing or otherwise) on or by the 5-year anniversary of the Filing Date (i.e., March 26, 2026) unless the NCDOR agrees to a longer payment term which NCDOR may communicate by continued acceptance of monthly payments. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 10 received by the NCDOR shall be applied to the principal tax obligation owed by Debtor pursuant to Class 10.  Debtor's Class 10 payments shall be applied in the following order: (i) interest accruing on the Class 10 NCDOR Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 10 NCDOR Tax Claim and (iii) interest and penalties which accrued prior to the Effective Date.

A failure by the Debtor to make a payment required by Debtor under Class 10 to the NCDOR pursuant to the terms of this Plan shall be an event of default under Class 10 as to the NCDOR.  In the event of a default under Class 10, the NCDOR may send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment which will accept overnight deliveries.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Only in the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the NCDOR may (a) enforce the entire amount of its then outstanding Allowed Class 10 NCDOR Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 10 NCDOR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the NCDOR that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.S.C. §502(i), and the right of the NCDOR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the NCDOR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1192 or 1141 (as applicable)of the Bankruptcy Code.  However, the rights and treatment of the NCDOR and obligations and liability of Debtor or its property regarding any claim of the NCDOR against Debtor which was assessable prior to the Filing Date (including any assessments of personal liability as responsible party for AP Framing as provided for in this Class 10) shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.S.C. §502(i), and not timely asserted by the NCDOR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred.  Debtor reserves the right to pay any tax claim in full at any time.

## Article 5
## Subchapter V Trustee

5.1     *Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

5.2     *Termination of the Subchapter V Trustee's Services.*

The services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code. Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

5.3    *Compensation of the Subchapter V Trustee.*

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3) periodically following confirmation of the Plan in accordance with the Plan.

Debtor shall pay all compensation awarded the Subchapter V Trustee as provided in Article 6 of the Plan.

## Article 6
## Treatment of Unclassified Claims

6.1    *Summary.*  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, are instead treated separately in accordance with Article 6 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

6.2    *Jones & Walden, LLC.* With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel.  As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $21,042.00. As of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer. Any claim of Jones & Walden LLC for professional fees and expenses associated with this Bankruptcy Case shall not be discharged pursuant to this Plan and nothing herein shall require Jones & Walden to forebear from or otherwise delay in enforcing its rights and remedies under law or equity regarding the same, including filing an attorney lien in accordance with O.C.G.A. §15-19-14 or otherwise.  Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm in accordance with Article 6.3 below.

6.3    *Professional Compensation.*  Any Allowed Administrative Expense Claim for Professional Compensation, including those of the Firm and the Subchapter V Trustee ("Professional Admin Claims") shall be paid as set forth in Debtor's Budget pursuant to the line item "Professional Compensation Claims". The holders of Allowed Professional Compensation Claims shall share said distributions pro-rata based on a fraction, the numerator of which is such holder's Allowed Professional Compensation Claim and the denominator of which is the total combined Allowed Professional Compensation Claims. Said Allowed Professional Compensation Claims shall not be discharged under the Plan.  In the event of a default in the payment of the Professional Compensation Claims, the entire principal and interest due to said holder shall become due pursuant to the Plan upon demand and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by Debtor.  Any remedy that is set forth in the Plan related to the Allowed Professional Compensation Claims is not exclusive of any other remedies that are provided for herein or by law and the holder may commence an action to enforce the same, with this Plan being treated as and

constituting a contract under Georgia law.  Notwithstanding anything to the contrary herein, nothing in the Plan, the Confirmation Order, or Final Decree shall prohibit Jones & Walden from perfecting its attorney lien in accordance with O.C.G.A. § 15-19-14.

6.4    *Administrative Expense Claims.*  Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, and unless otherwise specifically provided for it the Plan, each holder of an Allowed Administrative Expense Claim (excluding the Allowed Professional Compensation Claims) will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash pro-rata  over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim became a Final Order and (b) ending on the first day of the 60th month following the Effective Date, or (v) as otherwise agreed by such holder and Debtor in writing signed after the Effective Date. Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than Professional Compensation Claims.

6.5    *Application an Administrative Expense Claim.* Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim shall file an application for allowance of such Administrative Expense Claim with the Bankruptcy Court within thirty days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the application for Administrative Expense Claim upon counsel for Debtor and the Subchapter V Trustee.  Any Person who fails to timely file and serve an application for allowance of an Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

6.6    *Professional Fees.* Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

6.7    *Post-Confirmation Professional Fees.* Debtor may pay professional fees incurred after confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

## Article 7
## Means for the Implementation of the Plan

7.1    *Parties Responsible for Implementation of the Plan.*  Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office.  Debtor will also file the necessary final reports and may apply for a final decree after substantial consummation at such time as debtor deems appropriate unless otherwise required by the Bankruptcy Court. Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge

injunction, to prosecute an objection to claim or otherwise afford relief to Debtor and Debtor may request that the fee associated with such motion to reopen Debtor's case be waived.

7.2    *Sources of Cash for Distribution*.

7.2.1         The source of funds for the payments pursuant to the Plan is Debtor's continued operations.

7.2.2         A copy of Debtor's post Confirmation annual projections is set forth on **Exhibit "B"** to this Plan. Debtor's projections are based on Debtor's current salary of $250,000.00 per annum. Debtor is able to reasonably project his income based upon the operations and expenses of AP Framing.

7.2.3         Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.3    *Preservation of Causes of Action*.  In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in Debtor's sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise.  Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default.  Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

7.4    *Effectuating Documents, Further Transactions*.  Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

7.5    *Exemption from Certain Transfer Taxes and Recording Fees*.  Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.6    *Further Authorization*.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.7    *Liabilities of Debtor*.  Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## Article 8
## Distributions

8.1    *Disbursing Agent*.   Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor or its agent.

8.2    *Distributions of Cash*.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

8.3    *No Interest, Fees, Costs or Attorney Fees on Claims or Interests*.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-confirmation agreement in writing between the Debtor and a Holder, post-confirmation interest, fees, costs or attorney fees shall not accrue or be paid on Claims, and no Holder shall be entitled to interest, fees, costs or attorney fees accruing on or after the Filing Date through and including the Effective Date on any Claim or after the Effective Date unless specifically provided for in the Plan.  Additionally, and without limiting the foregoing, interest, fees, costs and attorney fees shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim. The

27

provisions of the section of the Plan shall include and pertain to, without limitation, any such claim for post-petition interest, fees, costs or attorney fees pursuant to 11 U.S.C. §§ 503, 506 or 507 or otherwise.

8.4     *Delivery of Distributions*.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").  Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor

or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

8.5     *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6     *Fractional Dollars*. Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.7     *Withholding Taxes*. Debtor shall make reasonable efforts to comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

**Article 9**
**Procedures for Treating and Resolving Disputed Claims**

9.1     *Objections to Claims*. Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

9.2     *No Distributions Pending Allowance*. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

9.3     *Resolution of Claims Objections*. On and after the Confirmation Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

### Article 10
### Provision for Assumption of Unexpired
### Leases and Executory Contracts

10.1    *Provisions Regarding Executory Contracts.*

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after the Effective Date. Any claims which are not timely filed will be disallowed and discharged. Any Allowed Claim for rejection damages will be treated and paid as a Class 9 General Unsecured Claim.

### Article 11
### Effect of Plan on Claims and Interests

11.1    *Vesting of Debtor's Assets.*    Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

11.2    *Discharge of Debtor.*

11.2.1    Discharge if Plan Confirmed Under Section 1191(a).    In the event the Plan is confirmed under Section 1191(a), the Debtor shall receive a discharge as provided for under Section 1141(d) upon the Confirmation Date. Without limitation of such discharge but in addition thereto, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

11.2.2    Discharge if Plan Confirmed Under Section 1191(b). If the Plan is confirmed under section 1191(b), as soon as practicable after completion by the Debtor of the payment of all payments expressly provided for under this Plan due within five (5) years of the Effective Date, the Court shall grant Debtor a discharge. The Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's

assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

11.3    *Setoffs*. Debtor may, but shall not be required to, set off or recoup against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

11.4    *Injunction*.    The Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) any acting to collect, offset, or recover any Claim except as provided for in this Plan against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction. Such injunction shall remain in effect as to each creditor for so long as payments to such creditor are provided for by the Plan.

11.5    *Effect of Confirmation*.

11.5.1    <u>Binding Effect</u>.    On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

11.5.2    <u>Filing of Reports</u>.    Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

11.5.3    <u>Post-Effective Date Retention of Professionals</u>.    Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtor will employ and pay professionals in their ordinary course of business provided all such requirements will continue to apply to the Subchapter V Trustee.

**Article 12**
**Conditions Precedent**

12.1    *Conditions to the Effective Date.*    The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.2 of this Plan.

12.1.1    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

12.1.2  All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion;

12.1.3  Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

12.2    *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 13
### Retention and Scope of Jurisdiction of the Bankruptcy Court

13.1    *Retention of Jurisdiction*.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

13.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

13.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

13.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

13.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor[3];

13.1.5  To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

---

[3] Notwithstanding anything to the contrary in the Plan, Debtor shall be authorized to file any Retained Action related to the collection of accounts receivable or otherwise in any state or local court with jurisdiction under applicable state law.

13.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

13.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

13.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

13.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

13.1.10 To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

13.1.11 To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

13.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

13.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

13.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

1.15.   To enter a final decree.

1.16.   To enter an order of discharge.

1.17.   To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

13.2   *Alternative Jurisdiction*.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

13.3    *Final Decree*.   If the Plan is confirmed, the Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate under applicable law, including without limitation any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; (4) to adjudicate any adversary proceeding or claim dispute (whether as a contested matter or adversary proceeding) whether filed before or after entry of the Final Decree or (5) for other cause and any fee associated with a motion to reopen this Bankruptcy Case (if necessary) may be waived upon order of this Court.

## Article 14
## Miscellaneous Provisions

14.1    *Modification of the Plan*.   Debtor shall be allowed to modify this Plan pursuant to sections 1191 and 1193 of the Bankruptcy Code or otherwise to the extent applicable law permits.

14.2    *Pre-Confirmation Modifications.*  Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

14.3    *Force Majeure.*  Without limitation of any other provisions of the Plan, the laws of force majeure shall apply to the Plan and Debtor's compliance with the Plan. Any Person with obligation under this Plan will not be required to perform any obligation under this Plan or be liable for damages to any other Person to whom performance is otherwise owed under this Plan so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire (or any substantial natural event), pandemics, laws, orders of government, and any other cause not reasonably within the control of such Person with obligations under the Plan and which by the exercise of due diligence the non-performing Party is unable in whole or in part to prevent or overcome. All time periods for such performance will be extended for the period that the act of God or force majeure is in place. Debtor further expressly reserved the right to modify this Plan pursuant to Article 14 of the Plan upon the occurrence of an act of God or force majeure. Debtor shall retain the right to reopen this Bankruptcy Case and seek other relief pursuant to 11 U.S.C. § 305(a) for any reason, so long as the Bankruptcy Court finds that such suspension is in the interests of creditors and the debtor.

14.4    *Allocation of Plan Distributions Between Principal and Interest*.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and

accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

14.5    *Applicable Law*.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia. Without regard to application of any principles of law respecting conflicts of law.

14.6    *Preparation of Estate Returns and Resolution of Tax Claims*.  Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.7    *Headings*.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

14.8    *Revocation of Plan*.  Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

14.9    *No Admissions; Objection to Claims*.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

14.10    *No Bar to Suits*.  Except as otherwise provided in Article 11 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

14.11    *Exhibits/Schedules*.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

**Article 15**

**Tax Consequences**

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 18th day of June, 2021

Uriel Espinoza Ibarra

*/s/ Uriel Espinoza Ibarra*

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
Attorney for Debtor in Possession

**Exhibit "A"**

**Liquidation Analysis**

**Uriel Espinoza Liquidation Analysis**

**Schedule A Real Property Liquidation**

| Property | Scheduled Value (100%) | Liquidation Value | Broker Fees | Property Tax (Est.) | Secured Creditors | Non Debtor | Exemption | Net Proceeds |
|---|---|---|---|---|---|---|---|---|
| 3313 Pristine Pt | $833,200.00 | $708,220.00 | ($42,493.20) | ($12,103.81) | ($15,931.38) | ($389,374.20) | ($43,000.00) | $205,317.42 |
| Jalisco property (Mex) | $110,000.00 | $93,500.00 | ($5,610.00) | | | $0.00 | $0.00 | $87,890.00 |
| TOTAL | | | | | | | | 293,207.42 |

**Schedule B Property Liquidation**

| Property | Scheduled Value (100%) | Liquidation Value | Broker Fees | Secured Creditor | Exemption | Net Proceeds |
|---|---|---|---|---|---|---|
| Household Goods | $5,000 | $4,250 | ($425) | $0 | ($5,000) | $0 |
| Electronics | $0 | $0 | $0 | $0 | | $0 |
| Clothing | $0 | $0 | $0 | $0 | | $0 |
| Cash in Bank | $2,000 | $2,000 | $0 | | $0 | $2,000 |
| **Vehicles** | | | | | | |
| 2019 Ram 1500 | $22,000 | $18,700 | ($1,870) | ($18,823) | $0 | $0 |
| 2017 Harley Davidson | $10,777 | $9,160 | ($916) | ($14,217) | $0 | $0 |
| 2016 Dodge Dart | $8,000 | $6,800 | ($680) | ($2,973) | ($5,000) | $0 |
| Big Boys Chopper | $1,000 | $850 | ($85) | $0 | $0 | $765 |
| **Other Property** | | | | | | |
| 100% AP Framing, | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL | | | | | | $2,765 |

| Total Net Proceeds from Liquidation Before Trustee and Admin Fees | $295,972 |
|---|---|

**Chapter 7 Administrative Expense Fee**

| CPA To Trustee Fees | ($5,000) | |
|---|---|---|
| Attorney to Trustee Fees | ($25,000) | |
| Trustee Fee | ($18,049) | |
| **Total Chapter 7 Admin Fees** | ($48,049) | |

**Chapter 11 Administrative Expense Fee**

| Chapter 11 Attorney | ($25,000) | |
|---|---|---|
| Sub V Trustee | ($7,500) | |
| **Total Chapter 11 Admin Fees** | ($32,500) | |

| **Total Admin Fees** | ($80,549) |
|---|---|

**Priority Tax Claims**

| IRS | $0 | |
|---|---|---|
| NCDOR | ($65,645) | *withholding taxes paid through AP Framing. Debtor has personal liability |
| GDOR | $0 | |

| **Total Priority Tax Claims** | ($65,645) |
|---|---|

| **Available For Unsecured Creditors** | $149,779 |
|---|---|

**Exhibit "B"**

**Monthly Budget**

|  | Monthly | Quarterly | Annual |
|---|---|---|---|
|  |  |  |  |
| **CASH RECEIPTS** |  |  |  |
| AP Framing Salary | $20,833.33 | $62,499.99 | $249,999.96 |
| Tax, Medicare Etc. | -$6,874.00 | -$20,622.00 | -$82,488.00 |
| AP Framing Plan Payments | $258.62 | $775.86 | $3,103.44 |
| **TOTAL RECEIPTS** | $14,217.95 | $42,653.85 | $170,615.40 |
|  |  |  |  |
| **CASH DISBURSEMENTS** |  |  |  |
| Real Estate Taxes | $1,008.66 | $3,025.98 | $12,103.92 |
| Property Insurance | $510.75 | $1,532.25 | $6,129.00 |
| HOA | $133.33 | $399.99 | $1,599.96 |
| Electric, Gas | $325.00 | $975.00 | $3,900.00 |
| Water Sewer Garbage | $250.00 | $750.00 | $3,000.00 |
| Telephone, Cable Internet | $400.00 | $1,200.00 | $4,800.00 |
| Home Maintenance | $500.00 | $1,500.00 | $6,000.00 |
| Food Housekeeping and Supplies | $1,000.00 | $3,000.00 | $12,000.00 |
| Childcare and Children's Education | $600.00 | $1,800.00 | $7,200.00 |
| Personal Care | $300.00 | $900.00 | $3,600.00 |
| Entertainment | $500.00 | $1,500.00 | $6,000.00 |
| Medical / Dental Payments | $350.00 | $1,050.00 | $4,200.00 |
| Auto Gas and Repairs | $500.00 | $1,500.00 | $6,000.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 |
| Vehicle Insurance | $665.00 | $1,995.00 | $7,980.00 |
| Additional Income Tax | $1,000.00 | $3,000.00 | $12,000.00 |
| **TOTAL DISBURSEMENTS** | $8,042.74 | $24,128.22 | $96,512.88 |
|  |  |  |  |
| **DISPOSABLE INCOME** | $6,175.21 | $18,525.63 | $74,102.52 |
|  |  |  |  |
| **PLAN PAYMENT** |  |  |  |
| Class 5 Ford Motor Credit Co. | $288.01 | $864.03 | $3,456.12 |
| Class 6 Harley Davidson | $257.19 | $771.57 | $3,086.28 |
| Class 7 Capital One | $561.80 | $1,685.40 | $6,741.60 |
| Class 8 Chrysler Capital | $129.43 | $388.29 | $1,553.16 |
| Class 10 General Unsecured | $3,500.00 | $10,500.00 | $42,000.00 |
| Professional Compensation Claim | $1,000.00 | $3,000.00 | $12,000.00 |
| **Total Plan Payments** | **$5,736.43** | **$17,209.29** | **$68,837.16** |

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

This 18th day of June, 2021

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
Attorney for Debtor in Possession